The next matter is NCAA versus the Governor of State of New Jersey. Good morning, Your Honors. My name is Ronald Riccio. I'm representing the New Jersey Thoroughbred Horsemen's Association. That entity is the operator of Monmouth Park Racetrack. May I reserve three minutes for rebuttal? Sure. Thank you. The first issue I'd like to address is the question of whether or not the district court committed reversible error when it held that the THA had not been wrongfully enjoined under Rule 65C. And there are basically three governing principles of law that determine whether or not, under that rule, there has been a wrongful injunction. What is your best case for when we determine wrongfulness? Definitely where you're going. Yeah. The best case is that the case law is clear uniformly that the date for determining whether or not the injunction is wrongful is not a snapshot of what the district court did at the moment the TRO was granted, but rather what is the ultimate decision on the merits in the case.  In hindsight, you look back to see whether or not, at the time the TRO was granted, whether at that point in time, with the benefit of what we now know the ultimate decision to be, did the enjoined party have the right all along to engage in the enjoined activity. And in this case, in 2012, New Jersey legalized sports betting at Monmouth Park. They did it again in 2014. So under New Jersey state law, for the entire period 2012 up to the Supreme Court decision and beyond, sports betting was legal at Monmouth Park. Let's talk about Christie one and Christie two. Christie one determined there was no unlawful commandeering. Judge Fuentes' opinion said there's no unlawful commandeering. Only because there was a savings interpretation. Okay, but I mean that was the determination that was made. Yes. The Constitution was definitely at issue. Oh, absolutely. Absolutely. It was at issue throughout this case. Well, Christie two, the issue, and I know I was on that panel, and then it went on back. Christie two, the injunction was entered and the bond was given in connection with Christie two. Right. And the issue there was whether when the state enacted or repealed legislation, whether it authorized. There was no constitutional issue presented in Christie two. We specifically said we won't revisit that. Nice try, but we decided that in Christie one. So the injunction that was entered and the TR that was entered was in connection with the issue of authorization. My question to you is that was not, and this is what Judge Shipp said, that was not wrongful. It was found there that the injunction, that wasn't ultimately what the issue was decided by the Supreme Court. So the wrongfulness, the nature of the wrongfulness, i.e., the unconstitutionality, was not in connection with the order in connection with which the bond was given. And that was. Does it, and posit another situation. Let's say the case of commandeering had been decided in the Second Circuit, and the issue of authorization was decided here in our case. It went, the Second Circuit case went up to the court and decided it was unconstitutional, which then meant that you had been wrongfully enjoined because it was unconstitutional. But it was a different court. Don't we have to tie the bond and the order and the wrongful restraint to the specific issue and the order that was entered? The answer is no, because the judgment of the district court was reversed by the United States Supreme Court. In addition, the issue of PASPA's constitutionality was at issue from the minute this case was filed until the date the Supreme Court decided the case. When we argued the TRO issue in front of the district court, we argued that you can't have it both ways. If the 2014 repealer is deemed to violate PASPA, then under the holding in Christie I, which said that PASPA is constitutional only because it gave the states the freedom to repeal and hold her in part. You cannot have it both ways. So the issue of PASPA's constitutionality was. It was implicit in Christie II. It was explicit, Your Honor. It was implicit in the sense that it was the predicate. There would be no Christie I or Christie II if the leagues had not used PASPA to block the THA from engaging in sports betting. I've been with this case for six years. There was never a point in time throughout this case that PASPA's constitutionality was not at the heart of the case. And the fact of the matter is, is that after the TRO was greeted, when we took the appeal to Your Honor, to your panel, and then to the en banc court, the constitutionality of PASPA was at issue again. And then when we petitioned for cert to the Supreme Court, the question presented to the Supreme Court was the constitutionality of PASPA. It was curious to me that Justice Alito's opinion did talk about, I mean, did rule based on Christie I, although they had denied cert when it was requested regarding Christie I. But the cert that was requested regarding Christie I was changed in Christie II. Because what happened in Christie II is that when New Jersey did what the court in Christie I said it could do, the argument was made by us. If this repealer is in violation of PASPA, then you have to go back to Christie I, because then under Christie I, PASPA is unconstitutional. Because the only reason PASPA was constitutional under Christie I was because of the savings interpretation. And the Supreme Court rejected the savings interpretation and essentially said that the arguments that the leagues made as to the constitutionality of PASPA were empty distinctions. This distinction between affirmative authorization and appeal was an empty distinction to quote the Supreme Court and was predicated to quote the Supreme Court on a misread by the leagues of the Supreme Court precedents. So this is a, this case is sui generis, is it not? I mean, this is. Let's hope so. This is not something where precedent is really going to help us and this can't be precedent. It's just a very unusual factual. Well, it is with wrongfulness. That might be. Pardon, Your Honor? Except for the issue of when do you measure wrongfulness in this circuit? Well, there's no question based on the Sprint case, based on instant air freight, that the determinative date is the ultimate decision on the merits. Sprint cites Blumenthal, which is a Second Circuit case, which really kind of explains why the determinative date is the ultimate decision on the merits. In fact, there's an old U.S. Supreme Court case, which they don't. The leagues don't mention in their brief, which I was surprised. The Houghton case. And in the Houghton case, we had a situation in which the Supreme Court ultimately found that the defendant prevailed. And when the defendant prevailed, that determined whether or not the injunction was wrongful. And Houghton also stands for the proposition that it's a per se rule. If the defendant who was enjoined ultimately prevails on the merits, then there's no room. That's their words. There's no room for any discretionary denial. It does have to be the ultimate ruling on the merits in that case. In other words, I posited that Second Circuit versus Third Circuit. And the bond was given in connection with the Third Circuit case for the Second Circuit. But it has to be the ultimate ruling. Which is what happened here. The ultimate decision in this case was a decision on the merits in favor of the THA. Does Houghton help in terms of which, where do you look? Do you look at the first case or do you look at the appeal of the issue? My reading of Houghton did not answer that question. It just talked about the obligation to impose bond damages. I don't think that you could do what the district court did here, which is essentially to engage in some type of a surgical analysis of a single issue. And say, well, that's the only issue I decided. And the Supreme Court decided a broader issue. What you need to look at is what did the Supreme Court do? They reversed the decision of the en banc court of this court, which had affirmed the judgment of the district court. So at the end of the day, we're looking at a judgment of the Supreme Court reversing a judgment by the district court in which the TRO was granted. And the decision on the merits related to the constitutionality of the statute, which was the only reason that the leagues were able to get into court in the first place. Because the statute creates a private right of action for the leagues. If that statute is unconstitutional, they don't belong in court. They never get to court. You never get to a TRO. You don't get to Christie I, Christie II, or the Supreme Court. Could you address whether we should adopt a rebuttable presumption with respect to your entitlement to the bond and the district court's ruling on the good cause? Yeah. I think and the leagues do not answer this question. But I don't believe under Rule 65 C, there's any discretion ever to deny a wrongfully enjoined party. Well, that's a pretty strong. That's a pretty strong statement. When you want half a loaf there and go for the rebuttable presumption. Well, I think the rebuttable presumption is the alternative argument. But I do think that you have to look at the statement in the atomic case, which is the Tenth Circuit case. And I think you also have to look, Your Honor, just briefly, if you trace the evolution of Rule 65 C, it begins with an old Supreme Court case, the Russell case, which said that in the absence of a rule, then a court has equitable discretion to deny a wrongfully enjoined party bond damages. But then the happening case comes along and says, no, no, even if there's no rule, if the wrongfully enjoined party ultimately prevails on the merits, that's it. There's no room for discretion. Now, Rule 65 C, if you look at the language of it, it's mandatory. And this court has been very strong on that. It's mandatory that the time the TRO is granted, there has to be a bond. It's mandatory. If it's mandatory going in to require a bond, how could there be any discretion under that same rule to allow a court to pull out what's mandatorily required by the rule? The text of the rule is clear. It says it's mandatory and there's nothing in there that gives a court discretion to change what it originally ordered. I'd like to talk about your understanding of void ab initio. You had a party having the right all along to do what it was enjoined from and doing. So this isn't an injunction question, but it's I'm getting to the notion of void ab initio and what that means. When a when the Supreme Court announces a new constitutional rule. So a year ago, the Supreme Court said state state rules requiring public sector employees to pay union dues is unconstitutional. Remember, that was the. Yes, that was the Janice decision. Yes. Under the First Amendment. Does that. And that overturned a 1977 case. Does that mean that union employees, state state union employees who were paying those union dues for the last 40 years now have a cause of action? Because that decision back in 1977 was void ab initio. That's a retroactivity question, Your Honor. I think the retroactivity question is different than the question of whether or not when a statute is declared unconstitutional. What does it mean? And this goes back to Marbury versus Madison from day one. You said that in your brief and I got fascinated by it. But I assume you're saying that basically the court didn't have the authority to do what it did. Therefore, what it did was nullity, i.e. void ab initio. The statute is a nullity. The statute is a nullity. It's as if the case is safe. It's as if it never existed. And that's really what Marbury says. It's void. What does void mean? Has no force or effect and never did have force or effect. So did the Janice decision was that did that make the earlier cases void ab initio? The earlier rule void ab initio. I think that that involves retroactivity questions such under Chevron and that whole line of cases, which I don't think pertain to this situation. I think this situation is a fairly cut and dry situation in which a statute is declared unconstitutional by the Supreme Court. And when that happens, what does that mean about that statute? Well, and if the issue is wrongful restraint and it was void, then I guess the issue is whether whatever it did meant that you had been wrongfully restrained. Oh, absolutely. Yeah. Yes. What it means is that from 2012 on, sports betting was legal at Monmouth Park under New Jersey law. And the federal law that was used by the leagues to block Monmouth Park from conducting sports betting was an unconstitutional federal statute, which is as if it never existed, which meant that there was never a bar beginning in 2012 that would have prevented Monmouth Park from conducting sports betting. So therefore, Monmouth Park, the THA, always had the right all along. Now, if you don't address good cause, you're going to have a pyrrhic victory here because you're going to get the bond, but get zero under it. So you better spend a couple of minutes talking about the judges. So I 15 minutes was not enough time. I should have more time. Well, obviously, we'll let your colleagues on the other side continue without getting schizophrenic when the red light pops on. So these two other issues, I think three of the issues we haven't even touched on. So go to work. Just turn his light on and let us get into the issues of it. Go ahead. So I can disregard it off. The light is off. Let's go. Let's go. I feel much better now. With respect to the issue of good cause. Let me let me say, first of all, the scope of review. The standard of review is not clear error and it's not abuse of discretion. Even even though we're talking about the district court exercising discretion. And even though we know that the normal rule is abuse of discretion, which is deferential review. Judge Posner in the coin case makes very clear that when you're dealing with an extraordinary action here, which is what this is, a rare action, namely the the denial of bond damages to a party who has been wrongfully enjoined. Then the court's appellate review is the equivalent of day noble. It's as if you are reviewing a question of law. And then the first thing you do when you begin that review is to look to the question of of has the presumption, which is Judge Randall's question, to get back to that, has the presumption in favor of the wrongfully enjoined party, recovering bond damages in the body. Now, this is the most interesting and frankly disquieting part of what the district judge did here. He concluded that there was good cause or good reason to deny bond damages to a wrongfully enjoined party, because the law that existed at the time the injunction was granted favored beliefs. That's what he said in coin. That was the very reason the district judge in coin used to deny bond damages. And the Seventh Circuit emphatically said, you missed the boat here, district judge. That is not a good reason to deny bond damages. It's a whole range of other reasons to take into account. And you didn't do that. And I do want you when you're going to get into the other coin factoring, the six or seven of them to wade through them. Assuming we're going to adopt coin. We haven't yet. But if we're going to go down that road, how those factors apply here. The coin factors. Yeah. Well, first of all, I think you have to look at whether or not there was a change in the law pending post T.R.O. There was no change in the law. There was a reversal by the Supreme Court. Obviously what happens because otherwise you wouldn't get the bond. Exactly. Exactly. You then look at the bond amount and the bond amount here was three point four million dollars. And you compare the bond amount against the proof of damages. Well, the record is unrefuted on proof of damages. There was the Drazen certification that was issued at the time the T.R.O. was granted, which estimated the damages to be more than a million seven every two weeks. But then in connection with our bond motion, we submitted an affidavit from Mr. Grove, who was an expert in this field, and he estimated that the T.R.O. damages were upwards of ten million dollars. So that would have to happen on remand, would it not? To the proof of damages. Only if only if your honor were to relieve the leagues of their tactical choices, not to contest the damages that we submitted when they had every opportunity to do so. When we applied to the remand on that issue, which favor you because you're another issue is you're arguing that the damages should not be limited to the amount of the bond. No, no, no. We are. We are accepting the fact that on the wrongfulness of the injunction, the damages are limited to the amount of the bond. I think the law is clear in that regard. I would like to argue otherwise. But I think that the law says that that's what it should be. Our claim for damages above the bond amount are predicated on the league's bad faith. OK. And I would like to speak to that for a moment. That's not really before us. That wasn't before the district court. They didn't make a ruling on that today. No, he did not make a ruling on it, but we raised it in our motion. It was ignored. Can't review something that hasn't been decided. You can't affirm. You also cannot affirm something that has not been decided. What I'm suggesting to the court is on the remand, not that you remand to the district court with instructions to order discovery on an accelerated basis, conduct an evidentiary hearing and then decide the question of whether or not our allegations of bad faith are compensable. Your Honor, the bad faith issue is before the court. It's in the record. We could footnote the fact that perhaps it's still there, but we're not going to do anything on it because we're reviewing court. The court just didn't get to it. What you're suggesting is that it goes back to the district court to decide the issue with did not decide. I would suggest to the court that there's enough in the record right now for the court to make two determinations. First, is is there a legally cognizable independent claim? Did the court rule on that issue? The court would court rule on that issue. The court avoided it. OK, we don't address avoided issues. We address we review issues that have been decided. But I also think your honor reviews issues that are in the record for the court. And in the record before the court is a concession by the leagues. I don't see the point of remanding to the district court when when the leagues have conceded the viability of the claim. And also on the issue of the facts. I think you better address the coin factors. OK, back to the coin factors. Back to the coin. The league's wealth is a factor to be taken into account, according to coin. And in that regard, I think that the leagues said when they opposed our application for a bond, they said, you don't need for us to put up a bond. We're very rich. We have a lot of money. So the wealth of the of the party seeking the injunction. I would take as a. At least the NFL has a lot of money, a lot of money. Well, I think they all do, your honor. I think they all do. I don't think there's anybody who's going to dispute that, especially in the case where the bond is three point four million dollars. You also take into account the damages that have been done as a result of the wrongful injunction. And let me speak for a moment about that, because I think this is something that has gotten overlooked in this case. For six years, the leagues used what we now know is an unconstitutional statute to block the T.H.A. from engaging in sports betting at Monmouth Park. This nearly put and this is in the record. It's nearly put Monmouth Park out of business permanently. But not only did it nearly put them out of business, but it cost people, workers, jobs, clerks. Which factor is this going to? This is what goes to the coin factor regarding the wealth of the leagues in relationship to. But the enjoined party, the equities, balancing the equities might be even four more minutes. Finish it to finish up. And again, you have some time to rebuttal, I think, don't you? I did reserve three minutes. I appreciate you all day. I don't mean to undermine or minimize the merits of your argument. It's just that we need to kind of wrap up. Yes, I understand. The outcome of the underlying suit is also a coin factor that becomes relevant. And in this case, the outcome of the underlying suit is clearly in favor of the T.H.A. In fact, on the constitutional issue, the Supreme Court voted seven to nothing on PASPA's constitutionality. So we have here a situation in which the law did not change post T.R.O. The district court who issued the T.R.O. had his judgment, its judgment reversed by the Supreme Court. The bond amount is clearly reasonable in relationship to the undisputed certifications on damages that are before the court. The damages done to the enjoined party are significant not only in terms of institutional business damage, but in terms of people damage. People damage. There were people that lived for six years under the threat of losing their livelihood. And that's got to be taken into consideration. And it's in the record. There are two affidavits in the record from people at Monmouth Park describing the hardships that were visited on the workers at the track. And that has to be taken account when we balance the equities here. When you balance the equities, they clearly preponderate in favor of Monmouth Park and the T.H.A. And the final point I want to say is they talk about their good faith. They say they acted in good faith. And this is where the declarations by the commissioners of the major sports leagues in this country are false. Indisputably false. There were lies that were submitted to the court under oath. And if there isn't a remedy for situations like this, then I don't know what is. Your argument on this is that as soon as we can get to it, is that on the one hand, they're arguing that legalized sports betting is going to destroy the integrity of the athletic endeavor, destroy sports, organize sports as we know it, put a cloud over athletic competition. At the same time, you're alleging investing in the companies that are involved in doing this. Why is that necessarily bad faith? That's not necessarily something we can get into. It does seem to me that you can on the one hand argue this is really bad for us, but it's a moneymaker. I'm going to get a taste. The reason it's so bad is because it was the spread of sports betting. That's what they were complaining about. They were complaining about the spread of sports betting. And they said you have to you have to stop the spread of it. And while they were saying to the court, stop the spread of it, because they're spreading it while they're spreading it. Well, that's exactly what we can. Thank you very much for your argument. We'll get back to you. Thank you. Good morning, Your Honors. May it please the court. Jeffrey Mishkin for the Apple sports team. I didn't keep track of Mr. Baker's time, but obviously we're not going to limit you to 15 minutes. Why don't we say 25 minutes? Is that fair? Mr. Riccio, 25 minutes. Whatever your honor decides is fine with me. Can I quote you on that, Mr. Riccio? We agree. Your Honor, we agree on that. Whatever suits your honor is fine for both of us. Your Honor, the temporary restraining order that was issued in October of 2014, in our view, was not in any sense wrongful within the meaning of Rule 65C. It's an interesting question. But even if that TRO could in any way be described as wrongfully issued, judgeship, in our view, properly exercised his discretion. But the test isn't whether the TRO was wrongfully issued. It's whether the party was wrongfully enjoined. Yes, Your Honor. The concept of wrongful is still there, and you can phrase it, I think, either way. But it's determined. Would you agree it is determined at the ultimate merits determination? It can't be determined otherwise, Your Honor. It can only be determined at that point. So, yes, it's always determined in hindsight. But that's a different question than you may only look at this particular moment in time. You may not look at any other moment in time. There's no case that says that. The hindsight here would take you back to the entire period. I said, well, okay, with hindsight, let's take a look at what happened. And in October of 2014, the law of this circuit was that PASPA was constitutional. The constitutionality of PASPA could not have been at issue before Judge Shipp. At the time he granted it, he was bound by the determination of this Court in Christie I that PASPA was constitutional. His grant of the TRO in Christie II had nothing to do. He said it had nothing to do. Well, you can say that. But when it came to us on appeal, it certainly was part of the whole ball of wax, was it not? No, it evolved. And the only reason that Christie II happened was because the legislature picked up on what was said in Christie I as to how to avoid the commandeering issue and did it. So isn't this a very unusual case where it's one ball of wax, if you will? Well, it's extraordinarily unusual. And I want to answer the one ball of wax. But what I think happened in this case is the issues got separated. And so the issue that ultimately decided the case on the merits was not the issue that decided the TRO. That's very unusual. Was it not embedded in it? No. Was it not sufficiently tied that we'd be splitting hairs to say, oh, okay, well, you weren't restrained because of that. You were restrained because of this. I don't. To me, it seems to be wrong to find the bond doesn't apply. Yes, I understand that, Your Honor. But that is giving weight to the void of an issue doctrine in a way that, in other words, what Your Honor is saying is we're going to treat this application on the TRO that we're now here on as if PASPA never existed. No, we're saying were the horsemen wrongfully restrained? And the Supreme Court said PASPA is unconstitutional. And they also took up the issue of authorization. I mean, interesting to me that they didn't take cert from Christie I. But then in Christie II, they took cert from Christie II and addressed the constitutionality. So necessarily wasn't that issue embedded in Christie II, which was? It was not embedded, Your Honor. It emerged. And it emerged in various stages because it was absolutely not in front of Judge Shipp. There was nothing he could do. This court had said PASPA is constitutional. So he's not saying, well, it's embedded in. I mean, he couldn't foresee how this would evolve. And I think ultimately his decision was that he wasn't going to, not as a matter of whether he was wrongful or not, but as a matter of his discretion, he was not going to impose costs and damages on the league for having correctly argued about the TRO and having not had a crystal ball that the Supreme Court confronted with Judge Van Aske's dissent in Christie I, which absolutely presaged what ultimately happened. It was before this. I don't know why they didn't take cert in 2014, but they didn't. And so when the TRO comes up before Judge Shipp in October, three months after the Supreme Court has denied cert, he is this issue of constitutionality is not before me. The only question, the only question I'm considering. He said it at the time. He said it in this decision as well on not giving any recovery on the bond, is whether or not the leagues had demonstrated a likelihood of success on the argument that the partial repeal in 2014 was actually an authorization under PASPA. That's all he was deciding. Now, he should have been more prescient than we should have been prescient. And to know that eventually it was going to come up. But it never came up until really the en banc proceeding, because your honor in the panel decision said PASPA is constitutional. We are not going to revisit that. Forget it. So it hadn't really emerged at all until the en banc proceeding. I originally was thinking along your lines, and I'm not obviously not deciding one way or the other. And it does make sense that it ought to be the issue specifically before that court. That is what is restraining you. I couldn't find case law that really was going to help me along those lines. And that, I think, is because this is such an unusual case. Exactly right, Judge Rendell. Exactly. We couldn't find any either. But we also couldn't find. It makes sense. The TRO is being issued pursuant to a certain case. And that issue should be the one from which the wrongful restraint flows. Exactly. I mean, otherwise, what does the word wrongful mean? How can the injunction or the TRO be wrongful when it's issued, given that state of the law on that day? In other words. Well, how can it be wrong? It's not. How can it be wrong? Wrong. Wrongful then when the Supreme Court doesn't change the rule until a month later? Yeah. That's the timing issue. And I absolutely concede you can't answer that. I don't know what the district judge could have done. Right. He was to enter an injunction that wasn't wrongful. Right. And given what eventually. Yeah. Sometimes district judges get it wrong and they don't know they got it wrong until the case is concluded. Here, Judge Shipp got nothing wrong. Normally, the issue on the TRO or preliminary injunction is going to resemble the issue that ultimately decides the case. In fact, in most of the cases, Judge Rendell, the injunction itself was reviewed on appeal. This TRO was never reviewed. Mr. Riccio said, oh, the Supreme Court reversed the injunction. No, they didn't. Well, the issue isn't wrongfully enjoined or wrongfully issued because the court could have been wrong. But when it goes up on appeal, it's upheld. It has to be wrongfully prevented from doing what they should have been allowed to do because the Supreme Court decided it was unconstitutional. But the court, whether the court on the merits was right or wrong is not the issue. It's whether going up to the Supreme Court, they say, okay, you should never have been restrained from doing this because it's unconstitutional. Isn't that the test? That's. Well, there's no case, Your Honor, in which a district court got nothing wrong. The issue that ultimately decided the case was not before him. There's no case that applies the term wrongful, that a party was wrongfully enjoined by a judge who was prohibited from deciding the issue that they say he got wrong. There's just there is no authority for that. And that you're right. This case is extraordinarily unusual. But we don't have to dwell, actually, on whether or not it's wrongful. That is an interesting metaphysical question. But once you get to the coin Delaney issue and whether and the Lataszewski case in this court, which said that a denial of recovery under a bond by a district court is reviewed for abuse of discretion. That was clear in this court. And that tells us several things. One, it tells us. It's a different kind of abuse of discretion. These under coin. It's a different kind. It's not the very deferential standard we usually use. In fact, beating coin, it sounds like they use the label abuse of discretion. But it's really deniable review. The Lataszewski case in a footnote cited coin, neither approvingly or disapprovingly. And Judge Shipp picked up on that footnote in Lataszewski and said, this is the Third Circuit has never actually said whether there is a presumption or not. But coin Delaney, Your Honor, found that even where the injunction was wrongful, there was no debate it was wrongful in coin Delaney. It had been reversed. The injunction itself had been reversed. Still, as Judge Posner put it, the district court had unquestioned, unquestioned authority to decide and go through the factors. And, yes, he criticized other cases that gave a broader equitable power to the district court. But at the end of the day, and I think it's the Zenith case that sort of tries to put all these cases together, there really is no difference. But if the district judge in his discretion, which he has, and this court said he had it in Lataszewski, concludes that there was good reason not to allow any recovery under the bond, that is reviewed under an abuse of discretion standard. What's the good reason here to deny recovery? The good reason here is that the issue was not before him and that it goes to the purpose of Rule 65C. The purpose of Rule 65C, at least in part, is you're trying to deter weak or flimsy injunctions. And especially because the district judge has very little time. And so the cases say there's a more than a normal chance that the district judge might get something wrong. That's the concern, that the district judge is going very fast. He might get something wrong. And you want to deter people from making frivolous applications. This application made by the leagues was not weak or flimsy in any way. And no matter how much time Judge Shipp had had to consider this issue, Judge Rendell, he couldn't possibly. He said, you know what, I'm going to have to consider that the constitutionality is somehow still in this case. He was told it was not in this case. So in all of those circumstances, he concluded it wouldn't be again, it wouldn't be reasonable or fair to impose on a party that brought a well-founded restraining order. And, you know, and say, well, you didn't have a crystal ball. You didn't know it's going to happen three and a half years. But you but that's why I issued the bond. In fact, he said, I didn't issue this bond to cover the risk that they're now asserting. It had nothing to do with it. Ultimately, the Supreme Court might change their mind, take certiorari three and a half years from now and decide. And not on the ground of the savings clause. Justice Alito did not decide this case on the assertion that, well, the leagues were wrong, that you could repeal your prohibitions and it would not be an authorization. Judge Alito agreed with that and said, but OK, that's a controversial point. The real reason this is constitutional and the one that Judge Van Aske had had argued in his dissent way back when was because that Congress could not issue direct orders to the states. Now that that neither we nor Judge Shipp were prescient enough to know that all that was going to happen. He found was not a good basis on which to impose costs and damages on a party with the intention of don't bring frivolous injunction applications. Our injunction application was not frivolous or flimsy or weak in any way. We prevailed in this court a number of times. And so the arguments we were making here cannot be dismissed as the kind of arguments and the reasons why an injunction bond ought to be recovered against. Your Honor, I still have a little time, but there are other points that Mr. Reshow talked about that were not decided by Judge Shipp. And perhaps that's really all I have to say. They weren't decided by Judge Shipp. But just just quickly, the claim that they're entitled to some sort of immediate recovery. How about the fact that the league didn't contest damages? Should this go back if we were to say that the bond applies? Does this go back for a damage hearing or the fact that you didn't contest them?  But the court didn't rule on it. No, there was no ruling on it. There was no discovering on it. That was an important issue before the magistrate judge in the briefing schedule before Judge Shipp on this motion. They put in affidavits about their damages, and we made a motion to bifurcate this motion so that anything that required discovery, anything that could not be decided either as a matter of law or discretion by Judge Shipp, we would not even brief it. So we didn't waive. We've objected to their damage claim. In fact, I think there's good reason in this record to have grave doubt about the damage claim, because even after the Supreme Court in May of 2018 issued its decision finding PASPA unconstitutional, it took 30 days before they could even start taking a bet. We only had a 28 day injunction. So that's all a matter of discovery and a hearing, and we're not arguing what the right answer there should be. But we have not conceded, never conceded their damages. And, of course, they're only entitled to provable damages even if you find that the injunction was wrongful and that Judge Shipp abused his discretion in concluding that there was good cause or good reason not to. But you argued earlier, you know, in terms of what 65C allows, requires, and you said it's really there to guard against a frivolous claim. In part, in part, Your Honor. But what's the rest of the part? Because that's not the language in 65C. It doesn't talk about frivolous. It talks about wrongfully enjoined restraint. Right. We're past that. I understand. But we're past that. I'm assuming now, I'm assuming that the injunction was wrongful within the meaning of Rule 65C. But the cases all say even so, even so, the district judge retains discretion to find that there should be no recovery under the injunction bond if the district court determines that there was good cause. But that's not the language in the rule. I understand it's not the language of the rule, but there's been a lot of decisional authority interpreting that. But not by us. Are you saying that it had to have been improvidently granted? No. No, no, no, no, no. There's room. You can have an injunction that's not improvidently granted and still be wrongful. Be wrongfully restrained. Wrongfully enjoined. Yes, Your Honor. You can be wrongfully enjoined and it would not be necessarily an abuse of discretion at the first level. Not necessarily. I mean, I think that, again, this is one of those cases, back to the wrongful, of a highly unusual separation of issues that leads to a district judge, as you can, I think, read in Judge Schiff's decision, saying, I didn't get anything wrong here. I mean, I couldn't consider the constitutionality and the only issue I could consider, I got right. Because that was affirmed by this court in the panel decision, the en banc decision, the Supreme Court itself. So I think Judge Schiff is probably saying, I didn't get anything wrong. But if I did, if there's some way of looking at this that would allow you to conclude that I was wrong in granting this TRO. Again, he could be right in granting the TRO and the party could still be wrongfully enjoined. And the opposite is true as well. You can prevail on the merits and not have been wrongfully enjoined. Because if that's not true, then we're rewriting Rule 65C. Rule 65C doesn't say the prevailing party who has been enjoined will always recover on the injunction bond. That's the interpretation that Mr. Riccio is putting on that. And there are many, many cases cited in our brief. That's wrong. That's just wrong. Even if you've been wrongfully enjoined, the court has to take a look at everything that happened. And in this highly unusual case where the issues got separated and Judge Schiff did his level best, the leagues brought an application that was well-founded and it was not. You filed them in both cases, correct? I'm sorry, Your Honor? You filed them on both dockets. We did. Of Christie 1 and Christie 2. We did. Because, yes, we did. But I still look at the language. And we're arguing about what Rule 65C suggests by its explicit language. But the language is pretty clear. To me, it seems that the movement, the restraining order can only be given as a conditional precedent if the movement gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. So it does assume that the error occurred when the injunction was – well, no, it doesn't assume that. It assumes, again, that the party was wrongfully enjoined or restrained, even if the TRO, when it was entered, was legally correct. And I understand where you're going with your argument. Maybe no cases have gotten into this before. Yes. There are two different – the issue that Rule 65C is speaking directly to is the requirement of a bond. Right. You've got to require the bond. Right. And Rule 65 says that very, very clearly. Then you come to the separate issue, when the party comes in and says, oh, I won on the merits and now I was wrongfully enjoined. You have to look at the question of wrongfully enjoined. And unless you're going to adopt what Mr. Reachow himself called a per se rule, which is if you prevail on the merits, you always recover on the bond. And there are – again, in our brief, there are many, many cases that say that is wrong, that you've got to look at the whole situation. And in this case, as unusual as any – I think any of us can imagine in trying to figure out whether they were wrongfully enjoined, and the only way you can conclude, I think, that they were wrongfully enjoined is if you – as I said earlier, if you treat the void ab initio doctrine as some sort of Orwellian concept that means the past never happened. The past happened. And it happened here in a very clear way, which left Judge Shipp with absolutely no choice. But you're arguing that they are saying, and we'll hear from your opponent shortly, that you always get damages. But if you apply the coin factors, that's not necessarily true. There's an individualized inquiry. You may get damages under the bond – damages, forget damages, that's a different term. But you may be able to recover on the bond for the bond amount. Looking at the coin factors, that seems to get around your concern that we're going to create a rule if you lose where the party who was, quote, wrongfully enjoined always recovers on the bond. If we apply coin, that's not necessarily going to be the result always. Sometimes we'll spend a lot. Right. And I think, again, Lataszewski – and you're free to revisit any case – but Lataszewski in 2010 denied – the district judge denied recovery on the bond. And this court upheld that, saying it was a matter of discretion and whether he abused his discretion. And the court found he did not. Now, it didn't quite go into the elaborate discussion we've had here about all of these factors. But I think the law of this circuit is not that Rule 65c means that if you prevail on the merit on whatever ground you happen to prevail on, you are going to recover on the injunction bond, even if that injunction bond was given for a totally different reason than the one on which you prevailed. Well, engage in the coin factors, then. Under the coin analysis, why should they not recover on the bond for the bond amount? Well, two reasons. I mean, two of those factors matter here. One is the good faith of the leagues. We had prevailed, temporarily, but we had prevailed on the constitutional issue in this court. New Jersey went ahead and adopted another statute that seemed to us pretty clearly, yes, an attempt to take advantage of things that had been said in the earlier case, but really just a pretend repeal in order to authorize what they wanted, which was sports gambling in the casinos and the racetracks. We felt we were on very, very strong ground in making that application. And Judge Shipp agreed and said, because of that, you're on strong ground, you had good reason for it, and I couldn't even consider the constitutionality. You take those things all together, and I am not, I don't find it fair and reasonable to impose on a party who brought an application for a TRO in good faith, had a strong legal argument. I granted that legal argument, and I then imposed a bond, as I'm required to do by Rule 65C, but I didn't do it because I thought, or anybody thought, three and a half years later, the Supreme Court is going to change its mind, grant cert, and find the statute unconstitutional. Those are the reasons, under Coindolini, that I think gave Judge Shipp the good grounds that he found, and I think that decision is protected by the abuse of discretion standard. Either way, be it the heightened abuse of discretion or the- Oh, yes, either way, and Lataszewski actually makes that point. Either way, if you go with a presumption or without a presumption, in Lataszewski, they said that they were going to deny the recovery on the bond, and I think that should be the result here as well. In Lataszewski, we said parties wrongfully enjoined when it had a right all along to do what it was enjoined from doing. Right. And when the Supreme Court struck down PASPA as unconstitutional, why were the horsemen not wrongfully enjoined because they really had a right all along to do what they were enjoined from doing? Well, I don't think they had a right all along unless you're going to indulge the fiction. Avoid ob initio. I mean- Why is that a fiction? If something's unconstitutional, it never should have been, and they were wrongfully restrained. Yes, sometimes that is true, and the Chico County case- Why is it not true here? Because it doesn't serve any of the purposes of Rule 65C to apply it retroactively in that way. It's not a retroactive application. It's unconstitutional. It's unconstitutional. They had a right to do all along what they were restrained from doing because PASPA is unconstitutional. It should never have been there. They were wrongfully restrained. Right, and I'm willing to accept that that's correct, but then you go to the next question of whether or not there was good reason, and that where you have a situation, as I've described, where Judge Schipp was absolutely bound, we had good reason to do what we would do. That is not serving the purpose of trying to prevent people from bringing frivolous applications, and, again, the Rule 65, the cases are pretty clear. It's the fact that the district judge is going so fast. There's no requirement of a bond in a permanent injunction, so although we had a TRO here for 28 days, Judge Schipp quickly replaced it with a permanent injunction, and it was equally unconstitutional, you know, void ab initio, but there's no bond there. Why is there a bond on temporary injunctions and not permanent injunctions? Because of how fast the district judge is going because if he's going too fast, he's likely, or she, to make a mistake. Making a mistake is important in this analysis, and Judge Schipp did not make any mistake. But making a mistake, that doesn't matter. That's not an issue. We said that in SPRINT. Making a mistake isn't the issue. It's when looking at the end of the case was someone wrongfully enjoined. Right, but I don't think SPRINT. And we said specifically the conclusion preliminary injunction later dissolved was wrongful in the sense the party had the right to do the enjoined act does not necessarily mean district court abuses discretion in granting the relief in the first place. I think that's right. It doesn't always mean it. But here, we're not, it's not that he didn't abuse his discretion. It's that he was not allowed to consider the issue. That, I don't think you're going to find a case, Your Honor, where a district judge. Well, that's your main argument is that this distinct issue before him. Yes, exactly. It's a very unusual fact setting. Did the Supreme Court's decision in Murphy apply retroactively? I'm sorry, Your Honor. Did the Supreme Court's decision in Murphy apply retroactively? There was no discussion by the court is to apply it retroactively. I don't know what that would mean. Exactly. Well, I asked. I asked your friend about their concept of void ab initio and referring to the Janice case. And he said, well, that's that's retroactive. That gets into retroactivity. OK. Did did Murphy apply retroactively? Again, the Supreme Court was a new rule going forward. Well, we took it, understood it as a new rule going forward. Again, you'd have to give a pretty robust reading to void ab initio to say that that there's gambling has always been lawful. And I'm passed with a 25 year old statute. Other than in Nevada, there has not been gambling state by state for a long, long time. I mean, it was I don't I don't know what it would mean to apply Murphy retroactively. There's certainly there are. And I see my time is up. There are circumstances where you would, of course, apply a declaration of unconstitutionality robustly. I mean, if a criminal statute were found unconstitutional and someone had been incarcerated under that statute, it would be unconscionable, unthinkable to leave them in jail. But Miller was an example where the court, after laying down a quote, new rule for habeas purposes. It was not clear whether that new rule was retroactive. It is an issue. I'm trying to put the easiest case of where it ought to be retroactive. But if you take the Inelman cases and I know they're not perfect analogy, but it shows the problem with with too literally saying the past is is erased. And that's why they were always entitled to it, because the past has been erased. In the Inelman cases, an annulment voids a marriage of an issue. But if there were children of the marriage, they are not rendered illegitimate because the statute was always or the marriage was always void. It depends. But when we're looking at unconstitutionality and the test is, were they wrongfully prevented from doing something? It's something unconstitutional. By necessity, they were wrongfully prevented from doing something wrongfully restrained. It's not it's really not a retroactivity issue. It's an issue of what fits within what's a wrongful restraint. Well, something's unconstitutional, clearly. And you were restrained because everybody thought it was constitutional. Clearly, it falls within wrongful restraint. I understand. Yeah, I don't have an issue. Jurisprudence is necessarily what we're what we need to look at. Well, again, Ron, just I will conclude the fourth time that let's assume that it was wrongful within the meaning of Rule 65. So you've got all these other cases to deal with and say, OK, but now let's look at everything that actually happened in the case and decide whether or not. There's good good reason in this particular case not to allow recovery under the bond. Thank you. Thank you very much. Thank you. With respect to the coin factors. Can you ask counsel why he thought that discretion should be exercised to deny recovery on the bond? And I think his answer was, well, we acted in good faith that we had a good case and we kept winning, you know, in the district court and in this court. We kept winning over and over again. So therefore, you know, don't penalize us for having obtained an injunction on the basis of a statute that we thought was a constitutional statute. Well, what's missing from that argument is what the Supreme Court said. Not only did they declare the statute unconstitutional, but it was seven to zero. And the league's arguments, which supposedly constituted good faith, were described by this panel, by the Supreme Court, rather, as being empty distinctions based on misreading of precedence. And when counsel says we didn't know the Supreme Court was going to change its mind, Supreme Court didn't change its mind. It corrected the errors. The precedents were there. They were misinterpreted and misread and drawn by empty distinctions by the league. But what's wrong with Mr. Mishkin's reading of the rule that it says wrongfully restrained by virtue of the order that I'm going to enter on this T.R.O. which, by the way, has to do with my determination as to whether what the legislature has done is authorizing sports gambling. How is that wrong? Isn't that implicit in Rule 65 that that bond is given in connection with an order, a T.R.O.? And the T.R.O. says I'm ordering that it is illegal authorizing, has nothing to do with the constitutionality. Why wouldn't we limit the bond to if that wrongfully restrained by virtue of that order? First of all, it's not what the rule says at all. And a key word in the rule is the word found, found to have been wrongfully enjoined. Found by what? Found by the reviewing court. But the Supreme Court didn't find that they were wrongfully enjoined by the order regarding authorization. Indeed, Justice Alito patted us on the back and said, you know what, what they did was authorizing. So the Third Circuit was right in that. No, Justice Alito said that the interpretation that was given to PASPA by the leagues was wrong. That PASPA prohibited authorizations by law and repeals. So, but even if, he said, but even if that interpretation was correct, PASPA would still be unconstitutional. Yes. So, so with respect to a judgeship not having a choice, you know, therefore he didn't get something wrong. He really did have a choice. We gave him a choice. We said you can't have it both ways. You can't say that the 2014 repeal violates PASPA and and PASPA is a constitutional at the same time. Because if the 2014 repeal is deemed to violate PASPA, then the choice judgeship had was to say that Christie one was wrongly decided. How did he have that choice as a district judge? He could have he could have he could have said he argument was you can't you don't have that choice. Therefore, you must conclude that the 2014 repealer violated PASPA. That was the error of his choice. The error of his choice was in finding both that it violated PASPA and that PASPA was constitutional. That was the choice he made was the wrong choice. Getting back to the issue. We need to sit on your clock a little bit more this time around, but we really do understand your arguments. May I just finish your honor one minute? One minute. All right. One minute. Starting now. The only difference between Christie one and Christie two were the numbers that are attached to the case. As Judge Randell correctly pointed out, the docket entries in both cases were filed in both cases. They were treated as one case. The issue of PASPA's constitutionality was one ball of wax. It was embedded. It was significantly tied together and it was inextricably intertwined. For that reason, the issuance of the injunction was wrongful and the exercise of discretion. There was no good reason to deny the wrongfully enjoined party bond damages. Thank you. That's amazing. This may be a first. You actually had 20 seconds left to go. Both also really commend you. It's a difficult case. An amazingly fine job in oral arguments, which is I don't know if it's helpful or makes it makes our job easier, I guess, of deciding a critical case. But I do appreciate the time and effort to both counsel refined counsel. But someone said that this was not metaphysics. Well, it is. The more I thought about this, the more I'm reminded of Schrodinger's cat. But thank you very much. And we'll take that advice.